**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HILLARY B. PATON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | **NO. 19-4818** |
| **ANDREW M. SAUL,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

**MEMORANDUM AND OPINION**

**LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE**                                                              **June 30, 2020**

Hillary B. Paton, ("Plaintiff") filed this action to review the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-433 ("the Act"). This matter is before me for disposition, upon consent of the parties.[1] For the reasons that follow, Plaintiff's request for review will be GRANTED.

**I.    PROCEDURAL HISTORY**

Plaintiff protectively filed for DIB on March 31, 2016. (R. 91). She alleged disability as of November 23, 2015, due to migraine headaches. (R. 92). The Social Security Administration denied her claim for benefits at the initial level of review. (R. 102). Following the denial, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on March 20, 2018. (R. 52-90). Plaintiff, represented by an attorney, appeared and testified. *Id*.

---

[1] In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment. (Consent and Order, ECF Nos. 6 and 7).

An impartial vocational expert ("VE") also testified at the hearing. (R. 82-90). On August 16, 2018, the ALJ issued a decision denying benefits under the Act. (R.12-27). The Appeals Council denied Plaintiff's request for review, (R. 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff commenced this action on October 16, 2019, and subsequently filed a Brief and Statement of Issues in Support of Request for Review. (ECF No. 10). Defendant filed a response. (ECF No. 13). The matter is now ripe for disposition.

## II.     LEGAL STANDARD

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c (a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits [her] physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform [her] past work. If the claimant cannot perform [her] past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The disability claimant bears the burden of establishing steps one through four. If the claimant is

determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, the claimant is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled so long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

### III.    FACTUAL BACKGROUND

The Court has reviewed the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review. Plaintiff was twenty-nine years old on her alleged disability onset date. (R. 70). Plaintiff is a high school graduate. (R. 197). She has worked as a receptionist, bank teller, office assistant, insurance sales representative, and a grants administrator at a non-profit organization. (R. 197). At the administrative hearing, Plaintiff testified that she last worked as an independent contractor for an insurance company. (R. 57). She reported that she is unable to work due to migraine headaches which cause her pain,

dizziness, and problems concentrating. (R. 77-82).

### A. Medical Evidence

Plaintiff has a history of recurrent migraine headaches. (R. 268-89; 290-300). On October 12, 2015, she presented to the Jefferson Hospital's Headache Center with a chief complaint of headache. (R. 546-55; *see also* R. 556-94). She reported daily headaches with migrainous features at an average 5 pain level on a 1-10 scale. (R. 547). She took medication for her headaches, and received Botox injections for treatment, which she reported improved the headaches. (R. 547, 549). Review of systems indicated that Plaintiff complained of fatigue, difficulty sleeping, anxiety, and depression. (R. 552). Physical examination revealed generally normal findings, including no acute distress, orientation in all three spheres, no distractibility, and intact cranial nerves. (R. 552-54). At discharge, Plaintiff presented with the same findings, including normal physical and neurologic exam results but with fatigue and pain. (R. 556-57). Plaintiff was prescribed medication and instructed to follow up with her neurologist. (R. 557).

On July 13, 2016, Plaintiff presented to Joseph Primavera, Ph.D., for an independent medical examination. (R. 605-08). Plaintiff reported that her headaches impact her functioning, including her sleep, concentration, memory, and planning. (R. 606). On examination, Dr. Primavera noted that Plaintiff was cooperative with appropriate social skills, normal appearance, coherent and goal-directed thought processes, full affect, euthymic mood, clear sensorium, orientation in all three spheres, good insight, and good judgment. (R. 606-07). Dr. Primavera indicated Plaintiff presented with average cognitive function and that she was able to complete attention, concentration, and memory tests; however, he noted "[s]he was cognitively slow evidencing difficulty in processing speed." (R. 607). Dr. Primavera diagnosed Plaintiff with "[m]ild neurocognitive impairment related to chronic migraine manifesting as aphasia,

impairment to executive functioning, and impaired attention and concentration associated with a combination of headache and medication side effects." (*Id.*).

Dr. Primavera also completed a Medical Source Statement of Plaintiff's Abilities to do Work-Related Activities (Mental). (R. 609-11). He opined Plaintiff had mild restrictions in her abilities to make judgments on simple work-related decisions and understand, remember, and carry out simple instructions. (R. 609). He also assessed moderate restrictions in Plaintiff's abilities to make judgments on complex work-related decisions; understand, remember, and carry out complex instructions; respond appropriately to usual work situations and changes in a routine work setting; and interact appropriately with the public, supervisors, and coworkers. (R. 609-10). Dr. Primavera explained that Plaintiff's pain and cognitive slowness supported the restrictions. (*Id.*).

Plaintiff continued treating at the Jefferson Headache Center until January 2017. (R. 444-505; 618-52). She reported approximately daily headaches with pain ranging on average between 5 and 7. (*Id.*). She affirmed associated symptoms of photophobia, concentration and memory problems, neck soreness, and anxiety. (*E.g.*, R. 451, 465, 492, 500, 618, 626, 634, 648). Plaintiff was prescribed various headache medications and treated with Botox injections. (*E.g.*, R. 447-50, 455-57, 622-25, 631-33). At appointments from November 2015 to October 2016, Plaintiff's treating physician noted improvement in functionality and severity. (*E.g.*, R. 451, 454, 458, 468, 479, 630, 634, 641, 644). Neurologic examination during Plaintiff's treatment from November 2015 until January 2017 revealed generally normal findings, including no acute distress, orientation in all three spheres, intact memory, no attention or concentration problems, normal mood and affect, normal fund of knowledge, and normal cranial nerve test results. (*E.g.*, R. 446-47, 453-54, 460-61, 467-68, 474-75, 481-82, 488-89, 494-95, 500-01, 620-21, 629-30,

643-44, 650).

Plaintiff next treated at the Migraine Headache Relief Center of Pennsylvania from March 2017 until June 2017. (R. 653-73). April 2017 treatment notes indicate "[Plaintiff] is off all meds" and that "she is doing pretty good." (R. 665-66). Improved functionality was noted in May 2017; however, she reported that she continued experiencing headaches and pain. (R. 669; *see also* R. 667-73).

On January 24, 2018, Plaintiff began treating with Dr. Daniel Skubick, M.D. upon referral from her attorney. (R. 677). Dr. Skubick reported that Plaintiff presented with a normal neurological examination, but noted "significant myofascial trigger point activity" on musculoskeletal examination. (R. 678). Dr. Skubick recommended trigger point injection therapy, and performed a motor nerve block injection procedure. (R. 678, 684-85). Dr. Skubick noted "significant improvement" in the trigger point activity and despite some persisting dysfunction he indicated that "the degree of activity, however, is clearly much improved." (R. 32). Plaintiff continued experiencing headaches, and Dr. Skubick recommended Botox injections. (R. 35-39). On follow-up, Plaintiff reported she did not notice any clinical improvement. (R. 40). Dr. Skubick indicated that "[o]n examination, it is clear that there has been a very significant improvement in the musculoskeletal status." (R. 40). At subsequent visits, Plaintiff reported "she may be 10% better but not much more." (R. 42). Dr. Skubick continued Plaintiff on Botox injections. (R. 42-47). At her last treatment session with Dr. Skubick of record, on September 27, 2018, he noted improvement in symptoms, but also that Plaintiff reported no reduction in headaches. (R. 47).

Dr. Skubick also completed a Medical Source Statement of Plaintiff's Abilities to do Work-Related Activities (Mental) on March 13, 2018. (R. 707-09). Dr. Skubick opined that

6

Plaintiff's impairment does not affect her ability to understand, remember, and carry out both simple and complex instructions. (R. 707). He also assessed Plaintiff as markedly limited in her ability to interact appropriately with the public and respond appropriately to usual work situations, and moderately limited in her abilities to interact appropriately with supervisors and coworkers. (R. 708). Dr. Skubick further opined that Plaintiff's headaches and symptoms would impair her focus and concentration for about four hours a day. (R. 708).

### B. Lay Evidence

At the March 20, 2018 administrative hearing, Plaintiff testified that she experiences headaches "from as little as two or three to all seven" days a week. (R. 67). She explained that she stopped working in 2015 due to the pain caused by her headaches, which averages at a seven on a one to ten scale. (R. 67-68, 78-79). She testified that her Botox injection treatments improved her functionality, but her pain level remained. (R. 68-69). She stated that Dr. Skubick switched her to Lidocaine injections in her neck and upper back, which reduced her pain levels. (R. 69-70).

Plaintiff testified that her abilities to walk, stand, and lift depended on whether she was having a good or bad day with her headaches and associated symptoms. (R. 70-71). She explained that on a bad day, she will spend most of the day laying down because cannot sit or stand for long and experiences fatigue, dizziness, and sensitivity to light, sound, and smells. (R 71-76). She testified that she must often lie down to recover to complete tasks, and that when she attempts to focus or read, the pain worsens. (R. 76-77).

## IV. ALJ'S DECISION

Using the five-step inquiry described above, the ALJ determined that Plaintiff was not

disabled.  (R. 15-27).

    1.    At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity after her alleged onset of disability.  (R. 17).

    2.    At step two, the ALJ found that Plaintiff suffers from the following severe impairment: migraine headaches.  (R. 17).

    3.    At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1.  (R. 18).

    4.    At step four, the ALJ found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations: limited to work with simple, routine, and repetitive tasks as defined in the Dictionary of Occupational Titles (DOT) as specific vocational preparation (SVP) levels 1 and 2, with little to no reading involved.  She is limited to having occasional interaction with the general public, co-workers, and supervisors.  She can have no more than moderate exposure to noise as defined by the SCO.  She can have no exposure to high intensity lighting environments, odors, dust, fumes, humidity, or vibration.  She can tolerate low stress work requiring little judgment.  (R. 20).

    5.    At step four, the ALJ found Plaintiff unable to perform any past relevant work.  (R. 25).

    6.    At step five, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy.  Representative occupations include: egg packer, lens inserter, final assembler, and circuit board layout taper.  (R. 26).

Accordingly, the ALJ found Plaintiff was not disabled.  (R. 27).

## V.   DISCUSSION

In her request for review, Plaintiff raises three claims: (1) "the ALJ's findings as to RFC were not supported by substantial evidence" (2) "the decision failed to assign proper weight to the opinion of a treating source" and (3)"the ALJ's finding that Plaintiff's migraine was not medically equivalent to 12.02 of the listings was not supported by substantial evidence."  (Pl.'s Br. at 3-19, ECF No. 10).

The Commissioner responds that substantial evidence supports the ALJ's RFC determination, the ALJ properly assigned limited weight to the treating source, and substantial evidence supports the ALJ's conclusion that Plaintiff's migraines do not meet the requirements of 12.02 of the listings.  (Resp. at 1, ECF No. 13).

For the following reasons, Plaintiff's request for review is granted.

Plaintiff first claim is that the ALJ's RFC determination was not supported by substantial evidence.  (Pl. Br. at 3-12, ECF No. 10).  Plaintiff contends "there is no substantial evidence to support the ALJ's exaggerated findings as to plaintiff's residual functional capacity." (Pl.'s Br. at ,ECF No. 10).  The Commissioner counters that substantial evidence supports the ALJ's findings.  (Resp. at 9-11, ECF No. 13).  For the following reasons, I conclude that the ALJ did not adequately explain her reasoning for discounting Plaintiff's subjectively reported symptoms.  Therefore, Plaintiff's request for review is granted and this matter will be remanded for the ALJ to provide a more specific explanation of the symptom assessment pursuant to S.S.R. 16-3p.

An RFC assessment determines "what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of [her] medically determinable impairment(s)."  SSR 83-10, 1983 WL 31251, at *7.  The ALJ must include all credibly established limitations in the RFC.  *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)).  Ultimately, the ALJ makes the RFC and disability determinations.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  "The ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for [her] conclusion sufficient to enable meaningful judicial review."  *Diaz v.*

*Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)).

Plaintiff contends that the ALJ failed to properly evaluate her subjectively reported symptoms. (Pl.'s Br., ECF No. 10, at 3-8). I agree. "An ALJ must give great weight to a claimant's subjective testimony . . . when this testimony is supported by competent medical evidence." *Schaudeck*, 181 F.3d at 433. While the ALJ "has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints if they are not fully credible," *Weber v. Massanari*, 156 F.Supp.2d 475, 485 (E.D. Pa. 2001), the ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." S.S.R. 16-3p, 2017 WL 5180304, at *10. The ALJ must explain his basis for rejecting a claimant's subjective testimony. *Schaudeck*, 181 F.3d at 433.

Here, the ALJ did not adequately explain her reasoning for discounting Plaintiff's subjectively reported symptoms. (R. 22-23). Pursuant to SSR 16-3p, an ALJ considers the factors set forth in 20 C.F.R. § 404.1529(c)(3), as well as "the consistency of the individual's own statements" and the "individual's attempts to seek medical treatment for symptoms." S.S.R. 16-3p, 2017 WL 5180304, at *7-9. Plaintiff endorsed a variety of associated symptoms from her headaches, including pain, dizziness, and fatigue, and sought medical treatment from multiple sources to address the symptoms. (R. 70-76; 223-30). In discounting Plaintiff's reports, the ALJ explained "[Plaintiff's] allegations are not fully supported by the evidence of record" and noted that "the record documents improved symptoms." (R. 23 (citing R. 400, 451, 458, 634, 641, 666-67)).

However, the ALJ's discussion of these treatment notes seems to omit consideration of the consistency of Plaintiff's subjectively reported symptoms; namely, her reports in the same treatment notes that she continued to experience pain from her headaches.  *Cf. Gross v. Comm'r of Soc. Sec.*, 653 F. App'x 116, 121 (3d Cir. 2016) (remanding ALJ's assessment of pain because the report relied upon by the ALJ had a "reference in the same report that the pain remained moderate to severe.").  Indeed, the treatment notes cited for showing improvement also indicate that Plaintiff still experienced pain associated with her headaches.  (*E.g.*, R. 451 ("[H]as continuous [headaches] with average severity of 7"), R. 458 (reporting Botox was therapeutic but "overall pain severity unchanged"); R. 634 ("[R]eceived botox which seems to be reducing full blown severe episodes slightly, baseline 7/10.  Pt states 'the pain is the same but my functionality is better'"); R. 641 ("Functionality is better.  Headache pain is about the same."); R. 667 (noting that Plaintiff reported a productive day than a "really bad [day] – pain was really bad")).

Accordingly, in light of the contradictory nature of the medical notes relied upon to discount Plaintiff's subjectively reported symptoms, I conclude that the ALJ's assessment of Plaintiff's pain is not supported by substantial evidence.  Plaintiff's request for review on this basis will be granted, and this matter will be remanded to the ALJ to clarify her reasoning for discounting Plaintiff's subjectively reported symptoms.[2]

---

[2] In her request for review, Plaintiff also asserts that the ALJ erred at Step Three and in weighing the opinion of treating source Dr. Daniel Skubick.  (Pl.'s Br., ECF No. 10, at 12-19). Because remand is granted for a reassessment of Plaintiff's subjectively reported symptoms, I decline to address these arguments, as a reanalysis of Plaintiff's reports and symptoms could impact the overall five-step sequential analysis.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's request for review is granted, and this matter is remanded for the ALJ to provide a more specific explanation of the symptom assessment pursuant to S.S.R. 16-3p.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge